IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

EUGENE BERNARD JACKSON,

    Petitioner,

v.                                                       CASE NO. 1:06-cv-00152-MP-AK

JAMES MCDONOUGH,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

    This cause is before the Court on Petitioner's petition for writ of habeas corpus.  Doc. 7.  Respondent has filed a response with supporting exhibits, Docs. 14 & 15, and Petitioner has filed a reply.  Doc. 17.  This cause is therefore in a posture for decision.  Having carefully considered the matter, the Court recommends that the habeas petition be denied.

**BACKGROUND**

    Petitioner was charged with multiple felonies stemming from two robbery attempts.[1]  On the day of trial, the State re-offered the plea agreement it had offered Petitioner before jury selection.  This was the same plea offer that was extended to Petitioner's co-defendant, his brother, Frankie Whetstone, except that it included a waiver of direct appeal.  Doc. 15, Ex. K.

---

[1] Petitioner's co-defendant, Frankie Whetston, also sought habeas relief in this Court. *Whetstone v. McDonough*, Cause No. 1:06cv112-MMP/AK.  The Report and Recommendation recommending that relief be denied has been entered and is pending decision by the district judge.

More specifically, the State offered a plea deal in which Petitioner would get 25 years imprisonment with no finding that he was a prison releasee reoffender, thereby allowing him "to earn gain time and good time," but in exchange he "must waive all his appellate rights and proceed to sentencing." After conferring with counsel, Petitioner advised the court that he "want[ed] to accept the plea that's been offered." Counsel then reviewed on the record each paragraph of the plea agreement, including his right to persist in his not guilty plea and require the State to prove Petitioner's guilt beyond a reasonable doubt, his right to confront witnesses and to have the assistance of counsel, and his right to testify in his own behalf. Counsel asked Petitioner if he understood that by pleading guilty he "would be waiving or giving up each and every one of those rights," which Petitioner answered affirmatively. He then questioned Petitioner regarding the sentence:

> MR. SALMON: Have I explained to you that the maximum possible sentence for conviction of all the crimes charged against you is life in prison?
>
> THE DEFENDANT: Yes.
>
> MR. SALMON: Have I explained to you that pursuant to this plea agreement there is no mandatory minimum penalty?
>
> THE DEFENDANT: Yes.

*Id*.

Petitioner then stated that he was competent to proceed, that he understood what was happening, and that he was not impaired. When Counsel asked Petitioner if the entirety of the plea agreement was encompassed within the written agreement or whether there were any "side deals" or "other possibilities of sentence other than the one that is set" forth in the written agreement, Petitioner sought clarification:

> All I want to know, if I go with this road, don't want [the penitentiary] talking about trying the change none of my sentences and giving me no mandatory time....I want to be complete.
>
> If I am taking this time...I want my gain time. It ain't no enhancement, it ain't none of that....No repeat offender. Ain't none of that. I want to get my gain time. I want to get it all. And I want it to be known on the record that's what I want. I want all my gain time.

*Id*. The court assured him, "You will get that." *Id*. Petitioner then indicated that he was satisfied with counsel's services, and that he was "entering this plea freely and voluntarily, knowingly and intelligently." When counsel asked Petitioner if he believed it was in his best interests to plead guilty, Petitioner stated, "I guess so." He refused, however, to admit that he was guilty of the charges to which he was pleading guilty." When the Court said, "We'll go to trial, then," counsel for Petitioner and the State agreed that he could instead "admit[ ] that he's guilty, believing that the plea is in his best interests even though he says he's innocent" or "neither admit nor deny that [he was] guilty of the charges," but "believing that the plea is in his best interests...." Petitioner initialed those spaces on the plea agreement form.

     Counsel later reiterated the proposed sentence--twenty-five years imprisonment with credit for time served and without any enhanced penalty–and Petitioner agreed that counsel had explained to him the allegations contained in the information and that he had not been threatened, coerced, or intimidated in any way. The State outlined the factual bases for each count, basically reiterating the contents of the information, and the court accepted Petitioner's plea as "being freely and voluntarily entered" and adjudicated him guilty on each count. It then sentenced him to 25-years imprisonment for armed robbery, 5 years for aggravated assault with a firearm, 15 years for attempt to commit armed robbery, and 5 years for possession of cocaine, to

run concurrently.

Petitioner appealed *pro se*, and appointed counsel filed an *Anders* brief. Doc. 15, Ex. I. The appellate court affirmed without written opinion. *Jackson v. State*, 879 So.2d 628 (Fla. Dist. Ct. App. 2004). Petitioner then filed a Rule 3.850 motion for post-conviction relief, raising the following issues of ineffective assistance of counsel: (1) failure to ensure that plea colloquy was proper, (2) misadvice by counsel regarding the admissibility of Petitioner's convictions if he testified, (3) misadvice by counsel that "all of the charged offenses carried life imprisonment," and (4) failure to request the court to comply with statutory requirements for conducting a change of plea hearing. Doc. 15, Ex. D.

Citing *Strickland*, the court rejected Petitioner's claims related to the plea hearing but set the other claims for evidentiary hearing. *Id*. According to the court, Petitioner's plea claims failed because he did not assert that "the alleged deficiency was prejudicial." *Id*. The court then conducted a hearing on the claims related to counsel's advice to Petitioner. Doc. 15, Ex. E. After the hearing, the court rejected those claims as well. Doc. 15, Ex. D. As to Petitioner's claim that counsel's misadvice regarding the admissibility and use of his prior convictions prevented him from going to trial, the court credited counsel's testimony that he did not discuss this issue with Petitioner "because the defense he had prepared for trial didn't require Defendant's testimony," and it therefore found that counsel did not "misadvise the defendant as to use of his criminal record for impeachment."

Regarding Petitioner's claim that counsel advised him that each charge he was facing carried a maximum life sentence, the court again credited counsel's testimony that he told Petitioner only the armed robbery charged carried a possible life sentence "and that the maximum penalty for his

charges therefore was life." In reaching this conclusion, the court looked to the plea colloquy which showed there was extensive discussion regarding the penalties on each count, none of which carried a possible life sentence except the armed robbery and no contrary representations by the State. *Id.*

Petitioner appealed the denial of post-conviction relief. Doc. 15, Ex. L. The only issue raised on appeal was whether the court erred by applying the wrong legal standard in summarily denying two grounds for relief, as he had shown the requisite prejudice from counsel's actions, namely that he would have gone to trial but for counsel's deficient performance, thereby rendering his plea involuntary. *Id.* The appellate court affirmed without written opinion. *Jackson v. State*, 925 So.2d 1032 (Fla. Dist. Ct. App. 2006).

Petitioner then filed the instant habeas proceeding in the United States District Court for the Middle District of Florida. It was subsequently transferred here. Petitioner raises the same claims here that he raised in the state court post-conviction proceedings.

## **DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1)　resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)　resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state

court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Section 2254 relief will not be granted unless Petitioner "has exhausted the remedies available in the courts of the State" or "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A) and (B). A claim is not exhausted if Petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*).

Claims which have not been fairly presented to the state court but are defaulted from state court review are considered technically exhausted because no remedies are available for purposes of § 2254(c). *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). *See also White v. State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. A respondent's failure to raise exhaustion does not constitute a waiver, since "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3); *McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005); *Dill v. Holt,* 371 F.3d 1301, 1302 n.1 (11th Cir. 2004).

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the

adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonable could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).

"The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no

"absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test

is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

    1.    Failure to ensure plea colloquy was proper.

In this claim, Petitioner charges that counsel acted deficiently when he, rather than the court, conducted the plea colloquy, and therefore, the plea was involuntary. "A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." *United States v. Brown*, 117 F.3d 471, 476 (11th Cir. 1997). "A plea is voluntary in a constitutional sense if the defendant receives real notice of the charge against him and understands the nature of the constitutional protections he is waiving." *United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005). To determine that a guilty plea is knowing and voluntary, the court must establish that the plea is free from coercion, that the defendant understands the nature of the charges, and that the defendant knows and understands the consequences of his plea. *Id*. A "guilty plea means something. It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998). In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

While there is no doubt that counsel conducted the entirety of the plea colloquy, he did not do so outside the court's presence or without the court's acquiescence. Indeed, the court was alert and listening to the proceedings and was observing Petitioner's demeanor to determine whether his plea was in fact voluntary and whether he was being advised of each of his constitutional rights and the consequences of pleading guilty. Indeed, at various points in the colloquy, the court stopped the proceedings or interjected with explanation. Although Petitioner was less than enthusiastic about changing his plea, it is clear that he made a rational and informed decision of his own free will and with the advice of counsel and family, that he was informed of his rights, and that the only promises made involved the length of his sentence and the agreement by the State not to seek enhanced punishment. Counsel thoroughly covered everything which the court would have covered, and because Petitioner's plea was freely, knowingly, and voluntarily entered, he was not prejudiced by the plea colloquy being conducted by counsel, rather than the court.

    2.       Misadvice by counsel.

In this claim, Petitioner charges that counsel misinformed him "that if he proceed to trial on the charged offense[s] and elected to testify in his own behalf, the state could introduce his number of prior convictions and the specific nature of the prior convictions." Because one of his past convictions was for lewd and lascivious act on a child, he thought that he would be convicted merely because of this prior conviction, and therefore, he pled guilty. He maintains that if counsel had told him "that only the number of prior convictions and not the specific nature of the convictions could be put before the jury, he would have proceed to trial instead of entering a plea...." Petitioner further claims that counsel

misinformed him that he was facing life imprisonment on each count, as opposed to life imprisonment only on the armed robbery count.

This claim was rejected by the state court as belied by the record and without credibility after the court conducted an evidentiary hearing. Assuming arguendo that the claim has been exhausted, Petitioner is not entitled to any relief. The court's credibility determination is accorded deference under § 2254(d)(2), and will be presumed correct, unless Petitioner shows by clear and convincing evidence that the court's conclusions regarding the credibility of the witnesses was unreasonable in light of the evidence presented in the State court proceeding. *Rice v. Collins*, 546 U.S. 333, 338-39 (2006). Petitioner has not shown by any evidence, muchless clear and convincing evidence, that the court's determination regarding the record or Petitioner's credibility was unreasonable. This claim should be denied.

3.      Failure to safeguard Petitioner's rights resulting in involuntary plea.

In this claim, Petitioner alleges that when he answered, "I guess," in response to counsel's inquiry as to whether Petitioner believed it was in his best interests to accept a plea agreement with the State, counsel improperly construed the response as a "yes." What Petitioner overlooks in the record is the fact that he voluntarily initialed the portions of the plea agreement allowing him to "sidestep" the issue of his guilt and persist in proclaiming his innocence while accepting the plea as being in his best interests. Counsel and the court recognized the equivocation of Petitioner's answer, recognition which prompted (1) the court to suggest going on to trial instead and (2) counsel to propose altering the agreement to allow Petitioner to persist in his claims of innocence. Petitioner could have stopped the plea at any time and insisted on going to trial, and he could have refused to initial the changes. This was

not Petitioner's first foray into the criminal justice system and to suggest that counsel induced him to plead when the record supports a finding that Petitioner changed his plea against counsel's advice is specious.

This claim is without merit.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the petition for writ of habeas corpus, Doc. 7, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this 10th day of June, 2008.


S/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**